## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRUCE ANTHONY DILLARD,** | : | **CIVIL ACTION NO. 1:15-CV-974** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **G. TALAMANTES, GEORGE NYE,** | : | |
| **III, D. LENTINI, KEPNER, BRAD** | : | |
| **HAPUT, C. ENTZEL, JESS** | : | |
| **KRUEGER, RUSSELL A. PURDUE,** | : | |
| **JOSEPH L. NORWOOD, RAUP,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

On March 12, 2015, plaintiff Bruce Anthony Dillard ("Dillard"), an inmate formerly housed at the Federal Correctional Institution, Schuylkill, Pennsylvania, ("FCI-Schuylkill"), commenced this <u>Bivens</u>[1] action in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The action was transferred to this court on April 15, 2015. (Doc. 6). Dillard's complaint (Doc. 7) names the following defendants: Bureau of Prisons ("BOP") Northeast Regional Director Joseph L. Norwood; counselor G. Talamantes; unit manager George Nye III; former lieutenant D. Lentini; captain Hepner; case manager Brad Haupt; former associate warden C. Entzel; former warden Jeff Krueger; warden Russell A. Purdue; and

---

[1] <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

lieutenant R. Raup.  Presently ripe for disposition is defendants' motion (Doc. 22) to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b).  For the reasons set forth below, the court will grant the motion to dismiss, and grant Dillard the opportunity to file an amended complaint.

## I.    <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In

the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## II.   Allegations of the Complaint

The allegations of the complaint stem from Dillard's incarceration at FCI-Schuylkill.  (Doc. 7).  Dillard alleges that his due process rights were violated when he was placed in the Special Housing Unit ("SHU").  (Id. at 4).  He further alleges

that he was placed in a cell that was "inadequate, inhumane and overcrowded," and was subjected to retaliation for filing grievances.  (Id.)

According to Dillard, defendant Talamantes placed him in a ten-man cell on two occasions—July 9, 2012 and August 29, 2012—and he was housed in a ten-man cell for a total of approximately nine months.  (Doc. 7 ¶¶ 2-3, 5).  Dillard asserts that the cell was overcrowded, unsanitary, had inadequate cleaning supplies, and was not conducive to a good night's sleep.  (Id. at ¶¶ 2, 5-7).  He also asserts that in September 2012, Talamantes moved Dillard's legal property from a storage area in retaliation for filing a grievance.  (Id. at 4).

In 2013, Talamantes purportedly denied Dillard's request for a new cellmate or cell change, and told other inmates that Dillard wanted his cellmate to be moved, resulting in rumors that Dillard was "on snitch time."  (Id. at ¶¶ 8-9).  Dillard avers that he spoke to defendant Entzel about a cell change in January 2014, but Entzel failed to intervene in his request.  (Id. ¶ 16).

Dillard alleges that defendant Nye also told inmates that Dillard wanted his cellmate moved, again causing rumors that Dillard was "on snitch time."  (Id. ¶ 9).  Dillard further alleges that, on February 7, 2014, Nye ordered him to dismiss his grievance regarding a cell change and reassigned him to an eight-man cell.  (Id.)  According to Dillard, defendant Krueger ultimately responded to his grievance regarding placement in the ten-man cell, explaining that Dillard was placed in the cell for safety reasons.  (Id. ¶ 18).  Thereafter, Nye allegedly removed Dillard's personal property from the eight-man cell, stored it inside his office, and ignored Dillard's request for return of his property.  (Id. at ¶ 10).

4

On August 20, 2014, defendant Lentini allegedly ordered that Dillard be placed in the SHU. (Id. ¶ 11).  Dillard suggests that his due process rights were violated because he was held in the SHU for 120 days.  (Id.)  Dillard asserts that defendant Kepner agreed to place him in the SHU as a supposed safety precaution. (Id. ¶ 12).  Dillard claims that his safety was not at risk and that Kepner lied about the reasons for his placement in the SHU.  (Id.)  Dillard further claims that Entzel failed to respond to his concerns about his placement in the SHU, as well as his complaints regarding denial of writing paper and pencils.  (Id. at ¶¶ 16-17).

At approximately the same time, defendant Haupt allegedly threatened to issue a false disciplinary write-up against Dillard in the presence of other inmates. (Id. ¶ 14).  Dillard alleges that Haupt failed to respond to his request for a copy of his trust fund account, denying him access to the courts.  (Id.)  Dillard also alleges that Haupt falsified his custody scorings sometime in 2013.  (Id. at ¶ 15).  He asserts that Haupt was fueled by retaliatory motives and intended to cause Dillard "tremendous hardship and pain."  (Id.)

In late 2014, Dillard twice requested documents from defendant Raup concerning his placement.  (Id. ¶ 13).  Dillard avers that Raup failed to respond to the requests and retaliated against him for filing grievances.  (Id.)  On October 20, 2014 and November 16, 2014, Dillard submitted two requests for administrative remedies to the regional office.  (Id. ¶¶ 20-21).  Dillard contends that Kepner denied him phone privileges and access to the courts on November 18, 2014, in alleged retaliation for filing grievances.  (Id. at ¶ 13).  On December 10, 2014, Dillard purportedly handed a request to defendant Purdue for placement back into general

population.  (Id. ¶ 19).  Dillard claims that Purdue failed to respond to his request.
(Id.)  On December 22, 2014, defendant Norwood rejected Dillard's October and
November requests for administrative remedies because they were not sensitive
issues.  (Id. ¶ 21).

As a result of defendants' alleged actions, Dillard asserts that he suffered
"mental, emotional and physical harm," though he suffered "no medical injuries."
(Id. at 4).  For relief, in addition to an award of damages, costs, and fees, Dillard
requests that defendants "be demoted in pay and rank" and that the "living
conditions inside of FCI-Schuylkill's Ten-Man cells and Special Housing Unit . . .
be scrutinized."  (Id. at 5).

**III.   Discussion**

A Bivens action is the federal counterpart to an action filed under 42 U.S.C.
§ 1983.  See Paton v. LaPrade, 524 F.2d 82 (3d Cir. 1975); Farmer v. Carlson, 685 F.
Supp. 1335, 1338 (M.D. Pa. 1988).  Section 1983 of Title 42 of the United States Code
offers private citizens a cause of action for violations of federal law by state officials.
See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95
F.3d 1199, 1204 (3d Cir. 1996).  "To state a claim under § 1983, a plaintiff must allege

6

the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## A.      Official Capacity Claims

Defendants' motion seeks dismissal of the complaint against all defendants to the extent they are sued in their official capacities.[2] (Doc. 28 at 27). "An action against government officials in their official capacities constitutes an action against the United States. . . ." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (citing FDIC v. Meyer, 510 U.S. 471, 483 (1994); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979)). The United States and its agencies, including the BOP, have not waived sovereign immunity for constitutional claims. Mierzwa v. United States, 282 F. App'x 973, 976-77 (3d Cir. 2008) (citing United States v. Testan, 424 U.S. 392, 400-02 (1976)). Consequently, any official capacity claims against the defendants are inarguably barred by the doctrine of sovereign immunity and will be dismissed. See Perez-Barron v. United States, 480 F. App'x 688, 691 (3d Cir. 2012) ("The United States, FBOP, and the individual FBOP employees in their official capacity . . . are barred from suit by the doctrine of sovereign immunity.") (citing FDIC, 510 U.S. at 486; Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986)).

## B.      Exhaustion of Administrative Review

Defendants next seek dismissal of the complaint based on Dillard's failure to fully exhaust all but three claims in the prison's administrative review process prior

---

[2] Dillard fails to indicate whether defendants are sued in their individual or official capacities. In the event that defendants are sued in their official capacities, such claims are barred by sovereign immunity.

to proceeding in federal court.[3]  (Doc. 28 at 19-21).  Under the Prison Litigation

Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of

relief available within the prison's grievance system before bringing a federal civil

rights action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Booth v.

Churner, 206 F.3d 289, 291 (3d Cir. 2000).  This "exhaustion requirement applies to

all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong."

Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement is

mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v.

Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the

PLRA applies to grievance procedures "regardless of the relief offered through

administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same).

"[I]t is beyond the power of [any] court . . . to excuse compliance with the

exhaustion requirement."  Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr.

Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

---

[3]  In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the court may consider certain documentation in review of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."  Id. at 223 (citing Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)).  See also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (observing that motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances).  In the case at bar, the court concludes that the records submitted by defendants in support of their motion to dismiss are indisputably authentic records which may be considered without converting the instant motion to a Rule 56 motion.

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. <u>Spruill</u>, 372 F.3d at 231. The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. <u>Id.</u> at 227-32; <u>see</u> <u>also</u> <u>Nyhuis</u>, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. <u>Spruill</u>, 372 F.3d at 227-32; <u>see</u> <u>also</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000).

The BOP has an administrative remedy procedure through which an inmate can seek formal review of an issue relating to any aspect of his or her confinement. 28 C.F.R. § 542.10(a). An inmate must first informally present his complaint to staff, and staff must attempt to resolve the matter. <u>Id.</u> § 542.13(a). When informal resolution is unsuccessful, the inmate must execute the appropriate form to bring the matter to the warden's attention within twenty calendar days of the date of the incident. <u>Id.</u> § 542.14(a). If the inmate is dissatisfied with the warden's response, he or she may appeal to the Regional Director within twenty calendar days. <u>Id.</u> § 542.15(a). To the extent the response of the Regional Director is unsatisfactory, the inmate may appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. <u>Id.</u> § 542.15(a). No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. <u>Id.</u> If an administrative remedy is rejected based upon a procedural deficiency, the remedy is returned to the inmate and the BOP

will provide the inmate with written notice explaining its reason for the rejection.
Id. § 541.17(b).

In the ordinary course of business, the BOP maintains computerized indices
of requests for administrative review filed by inmates.  A search of BOP records was
conducted to determine whether Dillard exhausted the administrative process as to
each of his claims *sub judice*.  (Doc. 29-1, Administrative Remedies Generalized
Retrieval ("BOP Retrieval") at 8-35).  This review revealed that Dillard filed a total
of fifty-three administrative remedies.  (Id. at 35).  Twenty-four of those remedies
relate to issues at FCI-Schuylkill.  (Id. at 21-23, 25-32).  Of the twenty-four
administrative requests for relief, sixteen relate to the issues in Dillard's complaint.
(Id.)  According to BOP records, Dillard only exhausted three administrative
remedies related to the issues in the instant complaint, to wit: administrative
remedies 557280, 703008, and 767827.  (See Doc. 29-1).  The claims contained within
these grievances are as follows:

- On September 11, 2009, Dillard filed administrative remedy 557280-F1 at
  the institution level complaining of unprofessional conduct at FCI-
  Schuylkill.[4]  (BOP Retrieval at 21).

- On August 30, 2012, Dillard filed administrative remedy 703008-F1 at the
  institution level setting forth complaints related to retaliation, cell
  assignments, and legal materials.  (Id. at 25).  On August 30, 2012, the
  remedy was rejected because it was submitted in improper form, and
  Dillard was advised to resubmit his request in proper form within five
  days of the rejection notice.  (Id.)  On September 7, 2012, Dillard refiled
  administrative remedy 703008-F2 at the institutional level complaining
  that Talamantes removed him from a two-man cell and placed him in a
  ten-man cell.  (Doc. 29-1, Declaration of Susan Albert ("Albert Decl.") ¶ 10;

---

[4] No further factual information regarding this remedy is available, as
defendants explain that administrative remedies are only maintained for a period of
three years, in accordance with BOP Program Statement 1330.18.  (Doc. 29 at 4 n.2).

BOP Retrieval at 36).  Dillard further complained that Talamantes removed his legal property from a storage area in September 2012 in retaliation for filing a grievance.  (Id.)

- On February 12, 2014, Dillard filed administrative remedy 767827-F1 at the institution level pertaining to a cell assignment.  (BOP Retrieval at 27). Dillard complained that he requested a new cellmate in January 2014, and that Talamantes and Nye, in retaliation for Dillard filing a grievance, told other prisoners that Dillard wanted new cellmate, resulting in rumors that Dillard was "on snitch time."  (Albert Decl. ¶ 13; BOP Retrieval at 48-52). Dillard further complained that Nye refused to process one of Dillard's filings for this remedy despite exhausting the claim, and that Nye and Talamantes moved Dillard to a common area cell in retaliation for filing a grievance.  (Albert Decl. ¶ 13; BOP Retrieval at 48-52).

Defendants concede that Dillard properly exhausted these three claims.  (Doc. 28 at 19-21).

The balance of Dillard's claims are unexhausted and subject to dismissal. Attempting to excuse the exhaustion requirement, Dillard argues that defendants frustrated his efforts to utilize the administrative review process.  (Doc. 37 at 13). Affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable.  See Todd v. Benning, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available when prison officials "purportedly prevented prisoner from employing the prison's grievance system").  Examples of affirmative misconduct by prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see Harcum v. Shaffer, No. 06-5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov. 21, 2007); (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see Mitchell v. Horn,

318 F3d 523, 529 (3d Cir. 2003); (3) advising an inmate that his or her situation does not require a grievance, see Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002); and (4) failing to file or respond to a prisoner's grievances, see Camp, 219 F.3d at 280-81.

There are no factual allegations detailing the manner in which prison officials purportedly engaged in affirmative misconduct such that they obstructed, hindered, delayed or prevented Dillard from pursuing administrative relief. See Banks v. Roberts, No. 06-CV-1232, 2007 WL 1574771, at *5 (M.D. Pa. 2007) (holding that while plaintiff alleged that defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, grievance process was available to him, and therefore, his claim was procedurally defaulted for failure to comply with the process); Nyhuis, 204 F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any circumstance). Dillard merely sets forth unsupported and conclusory allegations that prison officials obstructed his attempt to exhaust the administrative remedy process. To the contrary, it is undisputed that Dillard filed numerous grievances and administrative remedies during his incarceration at FCI-Schuylkill, clearly undermining his assertion that he was obstructed from seeking administrative relief.

Moreover, Dillard fully exhausted at least three administrative remedies, which prison officials plainly did not obstruct. While it is true that several of Dillard's administrative remedy requests were rejected for procedural reasons, (see BOP Retrieval at 30-32 (administrative remedies 794706, 802215)), these rejections did not render the review process unavailable. See, e.g., Boyd v. United States, No.

06-1359, 2009 WL 4544693, at *5 (M.D. Pa. Nov. 30, 2009) (finding that rejection of sensitive grievance did not exempt plaintiff from complying with exhaustion requirement).  Dillard fails to assert that he was misled by prison officials, that he was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process.  As such, the court will dismiss the unexhausted claims in the complaint.

### C.   Statute of Limitations

Defendants next contend that two of the three properly exhausted claims are barred by the applicable statute of limitations and must be dismissed.  (Doc. 28 at 21-22).  "A statute of limitations defense may serve as the basis for a Rule 12(b)(6) motion 'where the complaint facially shows noncompliance with the limitations period.'"  McSpadden v. Wolfe, No. 07-1263, 2008 WL 910010, *4 (E.D. Pa. Apr. 2, 2008) (quoting Oshiver, 38 F.3d at 1385 n.1).  In actions pursuant to Bivens, federal courts apply the state's statute of limitations for personal injury.  See Wallace v. Kato, 549 U.S. 384, 387 (2007).  In Pennsylvania, the relevant statute of limitations is two years.  Wooden v. Eisner, 143 F. App'x 493, 494 (3d Cir. 2005); see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855 F.2d 1080, 1087 (3d Cir. 1988) ("[T]he correct statute of limitations for . . . [§] 1983 actions is the state statute of limitations for personal injury tort actions."); 42 PA. STAT. AND CONS. STAT. ANN. § 5524.

However, the date when a cause of action accrues remains a question of federal law.  Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  Under federal law, a civil rights cause of action accrues—and the statute of limitations

begins to run—when the plaintiff "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). In other words, the limitations period begins to run when a plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Importantly, the "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id.

Defendants argue that, of the three exhausted claims, two claims must be dismissed for failure to raise them within the two year statute of limitations. (Doc. 28 at 21-22). Administrative remedy 557280 pertains to alleged events that occurred in 2009. (BOP Retrieval at 21). Administrative remedy 703008 relates to alleged events that occurred in September 2012. (Id. at 22). Dillard did not commence the instant action until March 12, 2015. (Doc. 7). The claims raised in administrative remedies 557280 and 703008 are plainly barred by the statute of limitations. These claims will be dismissed. Consequently, the only claims before the court which are both exhausted and timely are those set forth in administrative remedy number 767827.

### D.   Administrative Remedy 767827

#### 1.   *Personal Involvement*

Supervisory defendants Krueger, Purdue, Entzel, and Norwood argue that Dillard fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because the allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 28 at 28-29). The court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

The only allegations against defendants Krueger, Purdue, Entzel, and Norwood relate to their responses to grievance number 767827. (See Doc. 7 at 15-18; BOP Retrieval at 45, 47, 50, 54). A prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (citing Rode, 845 F.2d at 1207); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that "neither the filing of a grievance nor an appeal of a grievance

. . . is sufficient to impose knowledge of any wrongdoing"); <u>Ramos v. Pa. Dep't of Corr.</u>, 2006 WL 2129148, at *2 (M.D. Pa. 2006) (holding that "review and denial of the grievances and subsequent administrative appeal . . . does not establish personal involvement"). Consequently, defendants Krueger, Purdue, Entzel, and Norwood are entitled to dismissal of the claims against them based on their lack of personal involvement in the alleged denial of Dillard's constitutional rights.

### 2.   *Conditions of Confinement*

Dillard claims that defendant Talamantes told other prisoners and staff members that Dillard wanted a different cellmate, sparking rumors that Dillard was "on snitch time." (Doc. 7 ¶¶ 8-9). To establish a claim that a prison official put an inmate at risk of harm, an inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012). The inmate must show that the prison official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001).

Accepting Dillard's allegations as true, Dillard cannot establish the third element, to wit: causation of harm. In conclusory fashion, Dillard claims that he suffered "physical harm," but he explicitly states that he suffered "no medical

injuries." (Doc. 7 at 4).  The complaint is devoid of allegations that Dillard suffered any type of harm, let alone serious harm, or that Talamantes placed him at risk of serious harm.  Dillard fails to allege that other inmates threatened violence after he was purportedly labeled a "snitch."  Dillard's sole, relevant allegation—that Talamantes informed other inmates that Dillard wanted a new cellmate—is too attenuated to state a viable Eighth Amendment claim.  See, e.g., Brown v. Ellis, 175 F.3d 1019 (7th Cir. 1999) (table) (holding that "[f]ailure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment").  Accordingly, the court will dismiss this claim.

### 3.   *Due Process*

Dillard alleges that defendant Nye refused to process one of his administrative filings.  In reply, defendants assert that this filing was part of an administrative remedy that Dillard fully exhausted.  (Doc. 28 at 25).  Alternatively, defendants posit that this claim must be dismissed because an inmate does not enjoy a constitutional right to prison grievance procedures.  (Id.)  The court agrees with defendants.

The administrative remedy at issue, remedy number 767827, was deemed fully exhausted, emasculating Dillard's argument that Nye never processed the filing.  Moreover, it is well-settled that prisoners have no constitutionally protected right to a grievance procedure.  See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Rivera v. Pa. Dep't of Corr., 346 F. App'x 749, 751 (3d Cir. 2009) ("[A] prisoner has no constitutional right

to a grievance procedure."). Thus, Dillard's allegation is insufficient to establish a constitutional violation, and this claim must be dismissed. See Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) ("[B]ecause a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable.").

### 4. *Retaliation*

Dillard also alleges that certain defendants retaliated against him in response to his inmate grievances. The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With respect to the first and second Rauser prongs,

> Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is "protected" or an action is "adverse" will depend on context. . . . Standing in his cell in a prison, an inmate is

> quite limited in what he can say; his government jailor can
> impose speech-limiting regulations that are "reasonably
> related to legitimate penological interests." The fact that
> certain conduct of the plaintiff must be "protected" in order
> to state a claim does not change with the setting—what
> changes is the type of conduct deemed protected in that
> particular setting.

Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (quoting Turner, 482 U.S. at

89). "[T]he fact of incarceration and the valid penological objectives of deterrence

of crime, rehabilitation of prisoners, and institutional security justify limitations on

the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 50-51

(3d Cir. 2000) (citing Pell v. Procunier, 417 U.S. 817, 822-23 (1974)). "Thus, a prison

inmate 'retains [only] those rights that are not inconsistent with his status as a

prisoner or with the legitimate penological objectives of the corrections system.'"

Id. at 51 (quoting Pell, 417 U.S. at 822).

Dillard alleges that he was subjected to the adverse action of a cell

reassignment to a common area cell. It is well-established that an inmate does not

have a constitutional right to any particular custody or security classification. See

Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Moody v. Daggett, 429 U.S.

78, 88 (1976). Prisoners have no inherent constitutional right to placement in any

particular prison, to any security classification, or to any particular housing

assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano,

427 U.S. 215, 225 (1976). Therefore, Dillard's transfer from one cell to another

cannot constitute an adverse action for purposes of a First Amendment retaliation claim.  Talamantes and Nye are entitled to dismissal of this claim against them.[5]

### E.   Physical Injury Requirement

Lastly, defendants argue that Dillard should be precluded from pursuing compensatory damages on the ground that he "has not alleged *any* physical injury, let alone one that is more than *de minimis*" that would satisfy section 1997(e) of the PLRA.  (Doc. 28 at 29-30).  Section 1997(e) provides "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a proper showing of physical injury."  42 U.S.C. § 1997(e).  Dillard cryptically alleges that he suffered physical injury, while simultaneously conceding "he suffered []no medical injuries as a result of alleged conduct within complaint."  (Doc. 37 at 9); (see also Doc. 7 at 4).  Since Dillard does not allege more than a *de minimis* physical injury, § 1997(e) bars any claim for compensatory damages.

---

[5]  In his opposition brief, Dillard asserts that he was subjected to retaliation when defendant Talamantes placed him in a ten-man cell with "unsafe conditions." (Doc. 37 at 16).  In response, defendants argue that Dillard's attempt to include any tangential conditions of confinement allegations in his retaliation claim must be rejected based upon failure to exhaust the new claim.  (Doc. 38 at 11).  The properly exhausted and timely administrative remedy, number 767827, states that Dillard's "actual grievance is that Counselor Talamantes has committed acts of retaliation due to a previous grievance [] filed against him."  (Doc. 29-1 at 48-49).  However, the remedy further complains that the common area cell only contains one sink and one toilet, inmates have to wait in line to use the facilities, and inmates use the mop closet to wash.  (Id.)  To the extent Dillard seeks to pursue an additional Eighth Amendment claim pertaining to the conditions complained of in remedy 767827, he will be afforded the opportunity to file an amended complaint setting forth such allegations.

**IV.**   **Leave to Amend**

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson, 293 F.3d at 108; Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  For these reasons, the court concludes that Dillard should be afforded the opportunity to amend his complaint.

**V.**   **Conclusion**

For the reasons set forth above, defendants' motion (Doc. 22) to dismiss will be granted.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      December 29, 2016