**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRUCE ANTHONY DILLARD,** | : | **CIVIL NO. 1:15-CV-974** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **G. TALAMANTES,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

On March 12, 2015, plaintiff Bruce Anthony Dillard ("Dillard"), an inmate formerly housed at the Federal Correctional Institution, Schuylkill, Pennsylvania, ("FCI-Schuylkill"), commenced this action in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The action was transferred to this court on April 15, 2015. (Doc. 6). The matter is proceeding via an amended complaint. (Doc. 48). The amended complaint raises claims under Bivens[1], 28 U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA"). (Id.) Named as defendants are the United States of America, Bureau of Prisons ("BOP") Northeast Regional Director Joseph L. Norwood, Counselor G. Talamantes, Unit Manager George Nye III, former Lieutenant D. Lentini, Captain Hepner, Case Manager Brad

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Haupt, former Associate Warden C. Entzel, former Warden Jeff Krueger, Warden Russell A. Purdue, and Lieutenant R. Raup.

Presently ripe for disposition is defendants' amended motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 56). For the reasons set forth below, the court will grant the motion for summary judgment.

## I.  Legal Standard

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  Id.; Garcia v. Newtown Twp., 2010 WL 785808, at *3 (E.D. Pa. 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).  Accordingly, the court will treat defendants' filing as a motion for summary judgment.

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a), (c).  The burden of proof is upon the nonmoving party to come forth with "affirmative

2

evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also Fed. R. Civ. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 Supp. 2d at 315.

## II. Allegations of the Amended Complaint

The allegations of the amended complaint stem from Dillard's incarceration at FCI-Schuylkill. (Doc. 48). Dillard alleges that his due process rights were violated when he was placed in the Special Housing Unit ("SHU"). He raises claims of cruel and unusual punishment, inadequate housing conditions, retaliation, and inadequate treatment for mental health issues. (Id.)

According to Dillard, defendant Talamantes placed him in a ten-man cell on two (2) occasions—July 13, 2012 and August 29, 2012—and he was housed in a ten-man cell for a total of approximately ten (10) months. (Doc. 48 ¶¶ 1-2, 4). Dillard asserts that the cell was overcrowded, unsanitary, had inadequate cleaning supplies, and was not conducive to a good night's sleep. (Id. at ¶¶ 1-2, 4-5). He also asserts that in September 2012, Talamantes moved Dillard's legal property from a storage area in retaliation for filing a grievance. (Id. at ¶ 3).

In 2013, Talamantes purportedly denied Dillard's request for a new cellmate or cell change. (Id. at ¶ 6). He further alleges that Talamantes placed erroneous

information in "transfer forms" that the BOP utilized to transfer Dillard from FCI-Schuylkill to FCI-Gilmer, in order to defame and humiliate him, label him a snitch, and place his life in danger. (<u>Id.</u> at ¶ 11).

Dillard alleges that defendant Nye also told inmates that Dillard wanted his cellmate moved, again causing rumors that Dillard was a snitch. (<u>Id.</u> at ¶ 7). Dillard further alleges that, on February 7, 2014, Nye ordered him to dismiss his grievance regarding a cell change and reassigned him to an eight-man cell. (<u>Id.</u>) Thereafter, Nye allegedly removed Dillard's personal property from the eight-man cell, stored it inside his office, and ignored Dillard's request for return of his property. (<u>Id.</u> at ¶ 7). According to Dillard, defendant Krueger ultimately responded to his grievance regarding placement in the ten-man cell, explaining that Dillard was placed in the cell for safety reasons. (<u>Id.</u> at ¶ 13).

Dillard alleges that defendant Lentini verbally threatened him to dismiss his grievance about the room change "or he would discard it personally." (<u>Id.</u> at ¶ 8). Dillard refused to drop his grievance. (<u>Id.</u>) On August 20, 2014, defendant Lentini allegedly ordered that Dillard be placed in the SHU. (<u>Id.</u>) Dillard suggests that his due process rights were violated because he was held in the SHU for one hundred twenty (120) days. (<u>Id.</u>) Defendant Hepner allegedly placed Dillard in the SHU as a safety precaution. (<u>Id.</u> at ¶¶ 8-9). Dillard claims that his safety was not at risk and that Hepner lied about the reasons for his placement in the SHU. (<u>Id.</u> at ¶ 9). Dillard further contends that Hepner denied him phone privileges and access to the courts in November 2014, in retaliation for filing grievances. (<u>Id.</u> at ¶ 10).

4

Dillard avers that he spoke to defendant Entzel about a cell change, but Entzel failed to intervene in his request. (Id. at ¶ 12). Dillard further claims that defendant Entzel failed to respond to his concerns about his placement in the SHU, as well as his complaints regarding denial of writing paper and pencils. (Id.)

Around August 7, 2014, defendant Haupt allegedly threatened to issue a false disciplinary write-up against Dillard in the presence of other inmates. (Id. at ¶ 11). Dillard alleges that Haupt failed to respond to his request for a copy of his trust fund account, denying him access to the courts. (Id.) Dillard also alleges that Haupt falsified his custody scorings sometime in 2013. (Id.) He asserts that Haupt was fueled by retaliatory motives and intended to defame and humiliate him, label him a snitch, and place his life in danger. (Id.)

In November 2014, Dillard requested documents from defendant Raup concerning his placement in the SHU. (Id. at ¶ 10). Dillard avers that Raup failed to respond to the requests. (Id.)

On October 20, 2014 and November 16, 2014, Dillard submitted two (2) requests for administrative remedies to the regional office. (Id. at ¶ 15). On December 10, 2014, Dillard purportedly handed a request to defendant Purdue for placement back into general population. (Id. at ¶ 14). Dillard claims that Purdue failed to respond to his request. (Id.) On December 22, 2014, defendant Norwood rejected Dillard's October and November requests for administrative remedies because they were not sensitive issues. (Id. at ¶ 15).

As a result of defendants' alleged actions, Dillard asserts that he suffered mental, emotional, and physical harm, including sleepless days and nights, "fatigue

of mind and body", headaches, and minor cold symptoms.  (Id. at 3, 5, 8, 12-13).  For

relief, Dillard seeks monetary damages.  (Id. at 16-17).

### III.  Statement of Material Facts[2]

In the ordinary course of business, computerized indices are kept of requests

for administrative review filed by inmates.  (Doc. 63, Statement of Material Facts

("SMF"), ¶ 12).  A search of BOP records was conducted to determine whether

Dillard exhausted the administrative process as to his Bivens claims.  (Id. at ¶ 13).

This review revealed that Dillard filed fifty-nine (59) administrative remedies during

his incarceration with the BOP.  (Id. at ¶ 13).  Of the fifty-nine (59) administrative

requests for relief, twenty-four (24) are related to FCI-Schuylkill.  (Id. at ¶ 14).  Of

those twenty-four (24) filings, sixteen (16) pertain to issues raised in the amended

complaint, and only three (3) of the remedies were fully exhausted: administrative

remedies 557280, 703008, and 767827.  (Id. at ¶ 15-16).

In 2009, Dillard exhausted administrative remedy 557280 on the issue of

"unprofessional conduct."  (Id. at ¶¶ 17-24).  The details of the administrative

---

[2] Rule 56 of the Federal Rules of Civil Procedure provides: "If a party fails to
properly support an assertion of fact or fails to properly address another party's
assertion of fact as required by Rule 56(c), the court may . . . consider the fact
undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).  Similarly, Middle
District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted
unless controverted by the statement required to be served by the opposing party."
M.D. PA. L.R. 56.1.  See also (Doc. 66 ¶ 3(b); Doc. 70 ¶ 3(b); Doc. 75 ¶ 4(b)) (advising
Dillard that failure to file a responsive statement of material facts would result in
the facts set forth in defendants' statement of material facts being deemed
admitted).  Dillard failed to file a responsive statement of facts as required by the
Federal Rule of Civil Procedure 56(e)(2) and Local Rule 56.1.  Thus, the factual
background herein derives from defendants' statement of material facts, (Doc. 63,
Statement of Material Facts), and the uncontroverted record evidence.

remedy are unavailable, as administrative remedies are only maintained for three (3) years.  (Id. at ¶ 17, n. 2).

In 2012, Dillard exhausted administrative remedy 703008 regarding claims of retaliation, cell assignments, and legal materials.  (Id. at ¶¶ 25-33).  Specifically, Dillard complained that defendant Talamantes removed him from a two-man cell and placed him in a ten-man cell, and then removed his legal property from a storage area in September 2012 in retaliation for filing a grievance.  (Id. at ¶¶ 25, 29).

In 2014, Dillard exhausted administrative remedy 767827 wherein he complained that, on or about January 16, 2014, when he submitted a request for a new cellmate or cell change, defendants Talamantes and Nye (in retaliation for Dillard filing remedy 703008), told other prisoners that Dillard wanted his cellmate moved, resulting in rumors that Dillard was a snitch.  (Id. at ¶¶ 34-39).  Dillard also alleged that defendant Nye refused to process one of his filings for this remedy despite his ultimate exhaustion, and that Nye and Talamantes retaliated against him by moving him to a common area cell.  (Id.)

Dillard failed to exhaust his administrative remedies concerning any other Bivens issues in his amended complaint.  (Id. at ¶¶ 40-52).

For purposes of the FTCA claim, Dillard was required to file an administrative tort claim with the Regional Office and receive a final decision by the agency before filing his action in federal court.  (Id. at ¶¶ 53-55).  BOP records reveal that Dillard filed four (4) tort claim remedies, none of which concern the issues of the amended complaint.  (Id. at ¶¶ 56-58).

Defendant Nye was Dillard's Unit Manager and his duty was to supervise unit staff. (<u>Id.</u> at ¶¶ 59-61). Defendant Nye denies disposing of Dillard's legal materials at any time, speaking to other inmates about Dillard, and denying any of Dillard's constitutional rights. (<u>Id.</u> at ¶¶ 63-64). Defendant Nye acted within the scope of his employment and in accordance with prison policies and procedures. (<u>Id.</u> at ¶ 65).

Defendant Talamantes is a Unit Counselor at FCI-Schuylkill. (<u>Id.</u> at ¶ 66). His duties include authorizing cell changes, at times with guidance from other unit staff. (<u>Id.</u> at ¶ 67). On July 9, 2012, upon Dillard's placement in the SHU, Talamantes maintained Dillard's legal property in his office due to the volume of legal materials. (<u>Id.</u> at ¶ 69). When Dillard was released from the SHU on July 19, 2012, all of his legal property was returned to him. (<u>Id.</u> at ¶ 70). Defendant Talamantes did not take or dispose of Dillard's legal materials. (<u>Id.</u> at ¶ 68).

## IV.   <u>Discussion</u>

Defendants seek an entry judgment in their favor on the following grounds: (1) Dillard failed to exhaust all but three (3) of his <u>Bivens</u> claims; (2) the exhausted claims which occurred in 2009 and 2012 are barred by the statute of limitations; (3) defendant Nye is entitled to qualified immunity; (4) any <u>Bivens</u> claim against the United States is barred by sovereign immunity; (5) supervisory defendants Norwood, Krueger, and Purdue lack personal involvement in the alleged violation of Dillard's constitutional rights; and, (6) Dillard failed to exhaust the FTCA portion

of the complaint prior to filing this action. (Doc. 62).[3] The court will first address

Dillard's <u>Bivens</u> claim before turning to the FTCA claim.

**A.**     **<u>Bivens</u> Claim**

A <u>Bivens</u> action is the federal counterpart to an action filed under 42 U.S.C. §

1983. <u>See</u> <u>Paton v. LaPrade</u>, 524 F.2d 82 (3d Cir. 1975); <u>Farmer v. Carlson</u>, 685 F.

Supp. 1335, 1338 (M.D. Pa. 1988). Section 1983 of Title 42 of the United States Code

offers private citizens a cause of action for violations of federal law by state officials.

<u>See</u> 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

<u>Id.</u>; <u>see</u> <u>also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

---

[3] Alternatively, defendants argue that if judgment is not entered in their
favor, the amended complaint must be dismissed for improperly joining unrelated
allegations and defendants in violation of Federal Rule of Civil Procedure 20.
Because the court finds that defendants are entitled to summary judgment, the
court does not reach this argument.

1. ***Exhaustion of Administrative Review***[4]

Defendants seek an entry of judgment in their favor based on Dillard's failure to fully exhaust all but three (3) claims in the prison's administrative review process prior to proceeding in federal court. (Doc. 62 at 23-25). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Dillard's Bivens claim falls within the ambit of the PLRA. See Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to § 1983 actions and to Bivens actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the

---

[4] The exhaustion procedures for BOP Bivens claims differ from those of the FTCA. Exhaustion for Bivens purposes requires completion of the BOP's Administrative Remedy Program, whereas the exhaustion procedures for administrative tort claims are set forth in the Federal Tort Claims Act.

PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); <u>Nyhuis</u>, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." <u>Nyhuis</u>, 204 F.3d at 73 (quoting <u>Beeson v. Fishkill Corr. Facility</u>, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. <u>Spruill v. Gillis</u>, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. <u>Spruill</u>, 372 F.3d at 227-32; <u>see also</u> <u>Nyhuis</u>, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. <u>Spruill</u>, 372 F.3d at 227-32; <u>see also</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000).

For federal prisoners, such as Dillard, the BOP has an administrative remedy procedure setting forth the necessary steps to exhaust a grievance pursuant to § 1997e(a). 28 C.F.R. § 542.10(a). Specifically, the BOP has a three-level administrative process through which an inmate can address issues concerning the conditions of his confinement. <u>See</u> <u>id.</u> An inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional

Director within twenty calendar days. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office within thirty calendar days, which office is the final administrative appeal level in the BOP. Id. No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. A search of BOP records was conducted to determine whether Dillard exhausted the administrative process as to each of his Bivens claims before the court. (Doc. 63-1, Administrative Remedy Generalized Retrieval ("BOP Retrieval")). This review revealed that Dillard filed a total of fifty-nine (59) administrative remedies. (Id.) Twenty-four (24) of those remedies relate to issues at FCI-Schuylkill. (Id. at 14-27). Of the twenty-four (24) administrative requests for relief, sixteen (16) relate to the issues in the amended complaint. (Id. at 14-25). According to BOP records, Dillard only exhausted three (3) administrative remedies related to the issues in the instant amended complaint, to wit: administrative remedies 557280, 703008, and 767827. (Doc. 63-1). The claims contained within these grievances are as follows:

- On September 11, 2009, Dillard filed administrative remedy 557280-F1 at the institution level complaining of unprofessional conduct at FCI-Schuylkill. (BOP Retrieval at 14).

12

- On August 30, 2012, Dillard filed administrative remedy 703008-F1 at the institution level setting forth complaints related to retaliation, cell assignments, and legal materials. (BOP Retrieval at 25). On August 30, 2012, the remedy was rejected because it was submitted in improper form, and Dillard was advised to resubmit his request in proper form within five days of the rejection notice. (Id.) On September 7, 2012, Dillard refiled administrative remedy 703008-F2 at the institutional level complaining that Talamantes removed him from a two-man cell and placed him in a ten-man cell. (Doc. 63-1, Declaration of Susan Albert ("Albert Decl.") ¶ 10; BOP Retrieval at 36). Dillard further complained that Talamantes removed his legal property from a storage area in September 2012 in retaliation for filing a grievance. (Id.)

- On February 12, 2014, Dillard filed administrative remedy 767827-F1 at the institution level pertaining to a cell assignment. (BOP Retrieval at 27). Dillard complained that he requested a new cellmate in January 2014, and that Talamantes and Nye, in retaliation for Dillard filing a grievance, told other prisoners that Dillard wanted new cellmate, resulting in rumors that Dillard was "on snitch time." (Albert Decl. ¶ 13; BOP Retrieval at 48-52). Dillard further complained that Nye refused to process one of Dillard's filings for this remedy despite exhausting the claim, and that Nye and Talamantes moved Dillard to a common area cell in retaliation for filing a grievance. (Albert Decl. ¶ 13; BOP Retrieval at 48-52).

Defendants concede that Dillard properly exhausted these three (3) claims. (Doc. 62 at 23-25).

Dillard's remaining claims are unexhausted. Dillard fails to advance any argument to excuse the exhaustion requirement, and fails to set forth any argument, or produce any evidence, that defendants frustrated his efforts to utilize the administrative review process. The court notes that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. See Todd v. Benning, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding

in <u>Miller v. Norris</u>, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available when prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct by prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, <u>see</u> <u>Harcum v. Shaffer</u>, No. 06- 5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov. 21, 2007); (2) refusing to provide appropriate grievance forms in response to inmate inquiries, <u>see</u> <u>Mitchell v. Horn</u>, 318 F3d 523, 529 (3d Cir. 2003); (3) advising an inmate that his or her situation does not require a grievance, <u>see</u> <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d Cir. 2002); and (4) failing to file or respond to a prisoner's grievances, <u>see</u> <u>Camp</u>, 219 F.3d at 280-81. Given Dillard's failure to comply with Local Rule 56.1, there is simply no fact in the summary judgment record indicating that prison officials engaged in any affirmative misconduct to obstruct, hinder, delay or prevent Dillard from pursuing administrative relief. <u>See</u> <u>Banks v. Roberts</u>, No. 06-CV-1232, 2007 WL 1574771, at *5 (M.D. Pa. 2007) (holding that while plaintiff alleged that defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, grievance process was available to him, and therefore, his claim was procedurally defaulted for failure to comply with the process); <u>Nyhuis</u>, 204 F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any circumstance). Moreover, it is undisputed that Dillard filed numerous grievances and administrative remedies during his incarceration at FCI-Schuylkill, which would undermine any assertion that prison officials obstructed his ability to seek administrative relief.

14

Dillard fully exhausted at least three (3) administrative remedies, which prison officials plainly did not obstruct. Several of Dillard's administrative remedy requests were rejected for procedural reasons, (see BOP Retrieval at 30-32 (administrative remedies 794706, 802215)), however these rejections did not render the review process unavailable. See, e.g., Boyd v. United States, No. 06-1359, 2009 WL 4544693, at *5 (M.D. Pa. Nov. 30, 2009) (finding that rejection of sensitive grievance did not exempt plaintiff from complying with exhaustion requirement). Dillard fails to establish that he was misled by prison officials, that he was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process. A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). Dillard has not produced any evidence to justify his noncompliance with the exhaustion requirement. The undisputed record establishes that Dillard failed to properly exhaust available administrative remedies with respect to all but three (3) claims. As a result, defendants are entitled to summary judgment as to the unexhausted claims in the amended complaint.

### 2. *Statute of Limitations*

Defendants next contend that two (2) of the three (3) properly exhausted claims are barred by the statute of limitations. (Doc. 62 at 25-26). In actions pursuant to Bivens, federal courts apply the state's statute of limitations for personal injury. See Wallace v. Kato, 549 U.S. 384, 387 (2007) (in section 1983

actions the court looks to the law of the state for the length of the statute of limitations for personal-injury actions).  In Pennsylvania, the relevant statute of limitations is two (2) years.  Wooden v. Eisner, 143 F. App'x 493, 494 (3d Cir. 2005); see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855 F.2d 1080, 1087 (3d Cir. 1988) ("[T]he correct statute of limitations for . . . [§] 1983 actions is the state statute of limitations for personal injury tort actions."); 42 PA. STAT. AND CONS. STAT. ANN. § 5524.

However, the date when a cause of action accrues is still a question of federal law.  Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  Under federal law, a civil rights cause of action accrues—and the statute of limitations begins to run— when the plaintiff "knew or should have known of the injury upon which [the] action is based."  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  In other words, the limitations period begins to run when a plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000).  Importantly, the "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Id.

Defendants argue that, of the three (3) exhausted claims, two (2) of those claims were not raised within the two-year statute of limitations and are thus barred.  (Doc. 62 at 25-26).  Administrative remedy 557280 pertains to alleged events that occurred in 2009.  (BOP Retrieval at 14).  Administrative remedy 703008 relates to alleged events that occurred in September 2012.  (BOP Retrieval at 36).  Dillard did not commence the instant action until March 12, 2015, (Doc. 7), and he did not

16

file the amended complaint until January 23, 2017, (Doc. 48).  The claims raised in administrative remedies 557280 and 703008 are plainly barred by the statute of limitations.  Consequently, the only claims before the court which are both exhausted and timely are those set forth in administrative remedy number 767827.

### 3. *Administrative Remedy 767827*

#### a. <u>Personal Involvement</u>

Supervisory defendants Norwood, Purdue, and Krueger argue that Dillard fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because the allegations against them are based solely on the doctrine of *respondeat superior*.  (Doc. 62 at 32-34).  The court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*."  <u>Evancho</u>, 423 F.3d at 353 (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode</u>, 845 F.2d at 1207-08; <u>see</u> <u>also</u>, <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  <u>Evancho</u>, 423 F.3d at 354; <u>Rode</u>, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the

plaintiff of his rights is insufficient to establish personal involvement. <u>Rode</u>, 845 F.2d at 1208.

The only allegations against defendants Norwood, Purdue, and Krueger relate to their responses to grievances. <u>See</u> (Doc. 48 ¶¶ 13-15; Doc. 63-1, at 46, 55, 59, Grievance Reponses). A prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. <u>See</u> <u>Rode</u>, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006); <u>see</u> <u>also</u> <u>Croom v. Wagner</u>, 2006 WL 2619794, at *4 (E.D. Pa. 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); <u>Ramos v. Pennsylvania Dept. of Corrections</u>, 2006 WL 2129148, at *2 (M.D. Pa. 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Dillard has not provided any evidence that these defendants were personally involved in the alleged denial of his constitutional rights. Consequently, defendants Norwood, Purdue, and Krueger are entitled to an entry of judgment in their favor based on their lack of personal involvement in the alleged denial of Dillard's constitutional rights.

### b.    Conditions of Confinement

Dillard claims that defendant Nye told other prisoners and staff members that Dillard wanted a different cellmate, sparking rumors that Dillard was a snitch. (Doc. 48 ¶ 7). To establish a claim that a prison official put an inmate at risk of harm, an inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012). The inmate must show that the prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Courts in the Third Circuit have recognized that being labeled a "snitch" may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate. See Culver v. Specter, 2012 WL 4793765 (M.D. Pa. 2012); Tillery v. Owens, 719 F.Supp. 1256, 1276-77 (W.D. Pa. 1989).

There is no support in the factual record for this claim. Dillard has not adduced any evidence that he was labeled a snitch by Nye, and, in turn, that he faced a substantial risk of harm. To the contrary, Dillard does not even allege that Nye ever referred to him as a snitch. Instead, Dillard obliquely avers that Nye informed other inmates that he wanted new cellmate, which purportedly sparked

rumors that Dillard was a snitch. And he adduces no evidence to substantiate this averment. Dillard has also failed to present evidence that he was subjected to a substantial risk of harm because he has not suffered any physical injury as a result of allegedly being characterized as a snitch.[5] There is simply no evidence that Dillard suffered any type of harm, much less serious harm, or that Nye placed him at risk of serious harm. Moreover, Dillard has made no showing that other inmates ever threatened violence after he was purportedly labeled a snitch. "To overcome a motion for summary judgment, a plaintiff must come forward with evidence from which it can be inferred that the defendant-officials were . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir.2010) cert. denied, 562 U.S. 1272, 131 S.Ct. 1614, 179 L.Ed.2d 502 (2011) (quoting Beers-Capitol, 256 F.3d at 132). Dillard failed to meet his burden with respect to this claim. Consequently, defendant Nye is entitled to summary judgment as to the Eighth Amendment claim.

c.    Due Process

Dillard alleges that defendant Nye refused to process one of his administrative filings. In reply, defendants assert that this filing was part of an administrative remedy that Dillard fully exhausted. (Doc. 62 at 29-30). The court agrees with defendants. The administrative remedy at issue, remedy number 767827, was deemed fully exhausted, squarely refuting Dillard's claim that Nye never processed the filing.

---

[5] Dillard merely asserts that he suffered emotional distress and sleeplessness due to the "offending conducts of all named defendants." (Doc. 48 at 13).

Additionally, it is well-settled that prisoners have no constitutionally protected right to a grievance procedure. See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Rivera v. Pa. Dep't of Corr., 346 F. App'x 749, 751 (3d Cir. 2009) ("[A] prisoner has no constitutional right to a grievance procedure."). Thus, Dillard's claim is insufficient to establish a constitutional violation, and the court will grant defendants' motion as to this claim against Nye. See Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) ("[B]ecause a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable.").

   d. Retaliation

Dillard also alleges that defendant Nye retaliated against him in response to his inmate grievances. The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3)

that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With respect to the first and second Rauser prongs,

> Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is "protected" or an action is "adverse" will depend on context. . . . Standing in his cell in a prison, an inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are "reasonably related to legitimate penological interests." The fact that certain conduct of the plaintiff must be "protected" in order to state a claim does not change with the setting—what changes is the type of conduct deemed protected in that particular setting.

Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (quoting Turner, 482 U.S. at 89). "[T]he fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 50-51 (3d Cir. 2000) (citing Pell v. Procunier, 417 U.S. 817, 822-23 (1974)). "Thus, a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Id. at 51 (quoting Pell, 417 U.S. at 822).

Dillard's allegation that he was retaliated against because he filed administrative grievances implicates conduct protected by the First Amendment sufficient to satisfy the first prong of the Rauser test. See Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2006).

Dillard alleges that he suffered adverse action in the form of a cell reassignment to a common area cell. The court finds that this change in cell assignment was not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. Although courts have found that cell transfers to undesirable areas of a prison could have a strong deterrent effect, see Thaddeus-X, 175 F.3d 378, 399 (6th Cir. 1999) (finding placement in area of prison used to house mentally disturbed inmates combined with harassment and physical threats could constitute a sufficient adverse action for retaliation purposes), Allah, 229 F.3d at 225-26 (holding that continued placement in administrative confinement which resulted in reduced privileges could deter a person of ordinary firmness from exercising his First Amendment rights), whether a prisoner has met this prong of his retaliation claim will depend on the facts of the particular case, Allah, 229 F.3d at 225. Dillard speculates that defendant Nye moved him to a different cell for the sole purpose of harassing and punishing him. (Doc. 48 ¶¶ 5-7, 13). However, Dillard concedes that on at least one occasion, he in fact requested a cell change because he did not get along with his cellmate due to their age difference. (Doc. 48, ¶ 6). Simply moving Dillard to a different cell, and failing to allow him to cell with the inmate of his choice in a cleaner, quieter cell, cannot be considered "adverse actions" sufficient to deter a person of ordinary firmness from exercising his constitutional rights. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (observing that "those courts confronted with the question of whether inmates have a constitutional right to choose a cellmate have held that no such right exists.") (citations omitted)); Griffin v. Williams, No. 1:CV-10-2472, 2011 L 3501787 (M.D. Pa.

Aug. 10, 2011) (dismissing plaintiff's claim that his cell move from one double-bunk cell to another double-bunk cell in the same cell block was an adverse action sufficient to deter him from exercising his constitutional rights). As such, defendant Nye is entitled to summary judgment on this retaliation claim.

### 4.    *Bivens Claim against the United States*

Defendants argue that, to the extent that Dillard attempts to pursue a Bivens claim against the United States, the claim is barred by the doctrine of sovereign immunity. (Doc. 62 at 32). "An action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (citing FDIC v. Meyer, 510 U.S. 471, 483, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979)). "Neither the United States nor its agencies have waived sovereign immunity for constitutional claims." Mierzwa v. United States, 282 F. App'x 973, 976-77 (3d Cir. 2008) (citing United States v. Testan, 424 U.S. 392, 400-02 (1976)). Consequently, any Bivens claim against the United States is inarguably barred by the doctrine of sovereign immunity. See Perez-Barron v. United States, 480 F. App'x 688, 691 (3d Cir. 2012) ("The United States, FBOP, and the individual FBOP employees in their official capacity, however, are barred from suit by the doctrine of sovereign immunity.") (citing FDIC, 510 U.S. at 486; Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986)).

## B.    FTCA Claim

The FTCA allows federal prisoners to pursue lawsuits against the United States in an effort to recover for personal injuries sustained during confinement by reason of negligence of government employees.  See Berman v. United States, 205 F. Supp. 2d 362 (M.D. Pa. 2002) (citing United States v. Muniz, 374 U.S. 150 (1963); 28 U.S.C. §1346(b)).  The primary purpose of the FTCA is to "remove sovereign immunity of the United States from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."  Id. (quoting Richards v. United States, 369 U.S. 1, 6 (1962); 28 U.S.C. § 1346(b)).

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency.  The FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Thus, prior to commencing an FTCA action against the United States in federal court, a plaintiff must "first present[ ] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely."  Wilder v. Luzinski, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citing McNeil v. United

States, 508 U.S. 106, (1993); Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d Cir. 1994)).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. § 2401(b) or its tort claim under the FTCA will be "forever barred."[6] See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). To sue the United States in district court and avoid violating the FTCA's express statute of limitations, a plaintiff must present the tort claim "in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." Brown v. Camden County Counsel, 2010 U.S. App. LEXIS 9826, *6 (3d Cir. 2010) (citing Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir. 1989)).

In the instant action, Dillard filed four (4) administrative tort claims during the relevant time period. (SMF ¶¶ 56-58; Albert Decl. ¶ 23). None of these claims concerns the allegations of the amended complaint. (Id.) It is undisputed that Dillard failed to file an appropriate administrative tort claim with the BOP pertaining to his present claims, and thus failed to receive a final decision by the agency before filing his action in federal court, as required under 28 U.S.C.

---

[6] Title 28 United States Code section 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

§ 2675(a).  Therefore, defendants are entitled to summary judgment on the unexhausted FTCA claims.  See <u>McNeil v. United States</u>, 508 U.S. 106, 111-12, 113 S.Ct. 1980 (1996) (holding that a court is without jurisdiction to rule on a prematurely filed FTCA action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); <u>see</u> <u>also</u> <u>Shelton v. Bledsoe</u>, 775 F.3d 554, 569 (3d Cir. 2015) (finding that the district court properly dismissed FTCA claim where the plaintiff filed federal action prior to exhausting administrative remedies).

## V.  <u>Conclusion</u>

For the reasons set forth above, defendants' motion (Doc. 56) for summary judgment will be granted.  An appropriate order shall issue.

<span style="margin-left:40%">/S/ Christopher C. Conner</span>
<span style="margin-left:40%">Christopher C. Conner, Chief Judge</span>
<span style="margin-left:40%">United States District Court</span>
<span style="margin-left:40%">Middle District of Pennsylvania</span>

Dated:      March 28, 2018